# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| SEAN MICHAEL GADDIS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV408-027 |
| | ) | [ CR405-120] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

Sean Michael Gaddis moves this Court for 28 U.S.C. § 2255 relief. Doc. 1.[1] The government initially moved to dismiss his § 2255 motion as time-barred (doc. 3), but has since abandoned that position (doc. 19 at 1 n. 1), so the Court denies the government's motion on that basis. The government also opposes Gaddis's § 2255 motion on the merits. Doc. 19. Because movant's claims fail, his § 2255 motion and motions to amend and for summary judgment should be denied. Docs. 1, 4, 8.

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV408-027. "Cr. Doc." refers to documents filed under movant's criminal case, CR405-120.

# I.   BACKGROUND

Indicted on two counts of distributing five grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), Gaddis ultimately pled guilty to the lesser included offense of distributing an unspecified amount of crack.  Cr. docs. 1, 34.  As part of the plea bargain, the remaining counts were dismissed.[2]  Cr. doc. 34.  After the Court sentenced him to 151 months' imprisonment and three years' supervised release (cr. doc. 35), Gaddis unsuccessfully appealed, *United States v. Gaddis*, 203 F. App'x 994 (11th Cir. 2006), then filed the instant

---

[2]  Gaddis's counsel, as the district judge noted at sentencing, bargained well:

Had Mr. Gaddis gone to trial and been convicted – and I'm convinced from what I've seen at his plea hearing and the PSI that he would have been convicted.  If he had gone to trial and been convicted on Counts 1 and 2 of this indictment – not his statutory range for sentence, which would have been 20 years – his guideline range for his sentence would have been 188 months to 235 months.  Had the government chosen to pursue enhancing his sentence under the statute, 21 U.S.C. 851, which allows them to do it because of his prior criminal history and his numerous convictions on other drug offenses, his guideline ranges for imprisonment would have been 262 to 327 months in prison, and the statutory range would have been life imprisonment.

So before he ever gets here today, because of the agreement that you've made as his lawyer, and he's made, and the government's made with him, he's reduced his exposure from life imprisonment to a guideline range of 151 months to 188 months.  So he's already gotten a lot of benefit before he's ever walked in this courtroom today.

Cr. doc. 41 at 34-35.

§ 2255 motion.  Doc. 1.

## II.  ANALYSIS

### A.  Governing Standards

Many important rights are waived upon entry of a guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Childs*, 2007 WL 4162926 at * 3 (M.D. Fla. Nov. 20. 2007) (unpublished).  So "it is defense counsel's duty to assist actually and substantially the defendant in deciding whether to plead guilty and to ascertain whether the plea is entered knowingly and voluntarily." *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (11th Cir. Unit B 1981).  Thus,

> [c]ounsel must be familiar with the facts and the law in order to advise the defendant meaningfully of the options available. *Calloway v. Powell*, 393 F.2d 886 (5th Cir. 1968). This includes the responsibility of investigating potential defenses so that the defendant can make an informed decision. *Lee v. Hopper*, 499 F.2d 456 (5th Cir. 1974). Counsel's advice need not be the best, but it must be within the realm of competence demanded of attorneys representing defendants in criminal cases at that time. *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Ballard v. Blackburn*, 583 F.2d 159 (5th Cir. 1978).

*Bradbury,* 658 F.2d at 1087.  In assessing whether counsel provided constitutionally competent plea assistance, the Court must apply the two-

part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984),

which asks whether

> counsel's performance was deficient and [if so, whether] that deficient performance prejudiced [movant's] defense or sentencing. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The standard governing counsel's performance is "reasonableness under prevailing professional norms." *Id*. at 688, 104 S. Ct. at 2065. . . . The [movant's] burden to prove by a preponderance of the evidence that counsel's performance was unreasonable is a heavy one. *See Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). The [movant] must show that "no competent counsel would have taken the action that his counsel did take." *Id*. at 1315.

*Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008). That is, to succeed on

a claim of ineffective assistance, movant must first show that the advice "he

received . . . during the course of the representation and concerning the

guilty plea was not within the range of competence demanded of attorneys

in criminal cases." *Canales v. Quarterman*, 2007 WL 412172 at * 5 (S.D.

Tex. Feb. 1, 2007) (unpublished) (quotes, cites, and alterations omitted).

And he must then establish that counsel's deficient performance prejudiced

him, *Strickland,* 466 U.S. at 696, by showing

> that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. The best way to evaluate whether there is a reasonable probability [that movant] would have insisted on

going to trial is to determine whether [he] had available a defense that would likely have borne fruit at trial. *Upshaw v. United States*, 2008 WL 638261 at *1 (M.D. Fla., Mar. 5, 2008) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

*Robinson-Duncan v. United States*, 2009 WL 179619 at * 6 (M.D. Fla. Jan. 26, 2009) (unpublished); *cf. Brown v. United States*, 2009 WL 205630 at * 3 (11th Cir. Jan. 29, 2009) (unpublished) ("[t]o establish prejudice after the petitioner has rejected an offer to plead guilty, the petitioner must establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement") (quotes and cite omitted).

Here, Gaddis insists that had he been provided effective assistance, the government's case would have been pared down the point where he would not have pled guilty but instead opted for trial. Doc. 1 at 7, 20.

## B. Plea Proceedings

Gaddis's claims are informed by the factual basis to his guilty plea, as articulated through the testimony of the government's case agent (Geraldine Spears) at the plea hearing:

On November 16, 2004, myself, Task Force Agent John Stephens, met with a confidential source at the Savannah office. At that time we had the confidential source place a phone call to Mr. Gaddis to verify that he would be able to arrive and sell us an amount of cocaine. They agreed to meet.... At that time

I had Task Force Agent Clark search the confidential source's vehicle. I searched the confidential source, and provided the confidential source with $650.00 in government funds. And I also placed a body recorder on the source.

I then had surveillance pre-positioned in that area prior to the confidential source leaving the Savannah office. Myself and Task Force Agent Stephens followed the confidential source to that area, and the source parked in the little strip mall that's right next to the Wachovia Bank. At that time, Mr. Gaddis got out of his vehicle, which had arrived and surveillance had notified me that it had arrived. He got out, got into the confidential source's vehicle. After approximately five minutes, [Gaddis] exited the confidential source's vehicle, got back in his vehicle and left.

At that time we followed the confidential source back to the Savannah [Regional Office] and the source provided myself and Task Force Officer John Stephens with an amount of cocaine and $50.00. I then removed the body recorder, searched the confidential source, and had Task Force Agent Clark once again search the confidential source's vehicle.

Q    With negative results?

A    That's correct.

Q    And was some laboratory analysis conducted to confirm that the source – or that the substance distributed by Mr. Gaddis to the confidential source was in fact a mixture or substance containing cocaine base?

A    Yes, it was. It was sent to the Miami Southeastern Regional Lab.

Cr. doc. 47 at 21-22.

After the government represented that the above recitation constituted "the government's factual basis," *id.* at 22, the district judge asked Gaddis about it:

THE COURT: Mr. Gaddis, insofar as you know, do you admit the truth of what Agent Spears has just testified to me about?

MR. GADDIS: Yes, sir.

THE COURT: Do you or Mr. Harris [Gaddis's counsel] have any questions that you wish to ask the agent?

MR. GADDIS: No, sir.

*Id.* at 22. The judge then asked him to articulate what he did in relation to the Count 1 charges to which he was pleading guilty:

THE COURT: Well, did you sell the cocaine when they said that you sold it?

MR. GADDIS: Yes, sir.

THE COURT: Did you receive a telephone call where you agreed to meet the person and sell the cocaine?

MR. GADDIS: Yes, I agreed to meet her.

THE COURT: And prior to receiving that telephone call, had you already been in the business or the process of selling cocaine on other occasions?

| | |
|---|---|
| MR. GADDIS: | Yes, in the past? |
| THE COURT: | Yes, sir. |
| MR. GADDIS: | In the past I had. |
| THE COURT: | Do you know of any reason why I should not accept your plea of guilty at this time? |
| MR. GADDIS: | No, sir. |
| THE COURT: | Do you know of any reason, Mr. Harris? |
| MR. HARRIS: | No, sir. |

*Id.* at 22-23.

## C.  Specific Claims

### 1.  *"Perjury" Claim*

Gaddis first contends that his lawyers were ineffective for failing to move to dismiss his indictment on "perjury" grounds because the undercover telephone tape recordings of the confidential informant (CI) who set up the above-described transaction do not support a DEA agent's grand jury testimony about the amount of cocaine that Gaddis had agreed to sell to the CI.  Doc. 1 at 7 & ex. A  at 4.  DEA agent Stephens recounted the facts of the "CI transaction" to the grand jury and told them that Gaddis had agreed to sell the CI "approximately half an ounce of crack

cocaine." *Id.* This constitutes perjury, says Gaddis, because the government's telephone transcripts show that the CI ordered no specific quantity of cocaine from him. Doc. 1 at 9. Thus, Stephens lied to the grand jury, Gaddis contends. He reasons that, had counsel spotted and litigated this falsehood, the indictment would have been dismissed, so Gaddis would not have reached the plea hearing, much less plead guilty. *Id.*

The government correctly points out that the telephone conversation attached as exhibit B to Gaddis's § 2255 motion can be read to support Stephens's grand jury testimony, though it is in "code talk." Doc. 19 at 10-11 (citing doc. 1, ex. B at 2). In any event "false testimony before the grand jury [can justify] dismissal of an indictment if the false testimony results from 'prosecutorial misconduct' that causes prejudice to the defendant." *United States v. Verbitskaya*, 406 F.3d 1324, 1336 n. 3 (11th Cir. 2005). But the dismissal remedy does not apply to collateral matters, *id.* at 1336, and this Court concludes that even if the testimony illuminated by Gaddis was material, false, and not a collateral matter, nevertheless it was neither intentionally false nor sufficiently prejudicial to warrant dismissal of the indictment: Gaddis swore under oath about the fact of his sale to the CI,

and the PSI, to which he did not object, Cr. 41 at 5-6, established the quantity sold.

Gaddis therefore has not shown enough to warrant relief on this claim. *See United States v. Garate-Vergara*, 942 F.2d 1543, 1550 (11th Cir. 1993); *United States v. Medina-Flores*, 2006 WL 3335055 at * 1 (M.D. Fla. Nov. 16, 2006) (unpublished); B.L. Gershman, PROSECUTORIAL MISCONDUCT § 2:33 (*Nondisclosure of favorable evidence--Perjured testimony*) (2d ed. 2008) ("indictments have been sustained despite the introduction before a grand jury of perjured testimony when such evidence was not material to guilt, there was sufficient competent evidence before the grand jury apart from the perjured testimony, the prosecutor was merely negligent in not discovering the perjury, or the case was not a "flagrant" example of a knowing use of perjured and material testimony") (footnotes omitted). Since Gaddis cannot meet the *Stickland* performance prong, this claim fails.

## 2. *Inaudible Tapes Claim*

Gaddis next points out that the government's tape evidence of recorded telephone conversations involving him was "mostly unintelligible."

Doc. 1 at 9. "One tape was blank," he elaborates, "and the transcripts were not accurate." *Id.* His trial counsel, he contends, were thus ineffective for failing to move to suppress them on those grounds. *Id.* at 9-10.

As the government shows, however, trial counsel litigated this issue before the magistrate judge and later, by way of an Objection, before the district judge. Cr. docs. 23, 24. The district judge did not deny the argument out of hand, and in fact invited counsel to further litigate it if Gaddis changed his mind (he by then had communicated his intent to plead guilty) before the upcoming Fed. R. Cr. P. 11, guilty-plea hearing. Cr. doc. 31 at 3-4. At that hearing, Gaddis swore under oath that he met with his counsel repeatedly, had no problems with them, and wanted to plead guilty. Cr. doc. 47 at 11, 18.

Movant's guilty plea of course waived any right to pick at the government's evidence later. *See, e.g., United States v. Arias*, 210 F. App'x 884, 887 (11th Cir. 2006); *United States v. Loya*, 2008 WL 2794653 at * 2 (E.D. Ky. July 18, 2008) (unpublished). And Gaddis otherwise links no ineffective-counsel showing to counsel's litigation of the tapes' quality. His "solemn declarations" before the district judge (that he wanted to plead

guilty and thus, by extension, waive this issue) "carry a strong presumption of verity" and rightly constitute a "formidable barrier " for Gaddis to overcome in these collateral proceedings. *Cross v. United States*, 2009 WL 211418 at * 8 (S.D. Ga. Jan. 27, 2009) (unpublished) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). With nothing but conclusory assertions now, Gaddis has not overcome that presumption, *see, e.g.*, *Byrd v. United States*, 2008 WL 4326533 at * 3 n. 5 (S.D. Ga. Sept. 22, 2008) (unpublished), so this claim likewise fails.

### 3. *Entrapment Defense*

Gaddis's next argument is facially frivolous. He complains that his counsel were ineffective because they failed to investigate and pursue an entrapment defense. Doc. 1 at 10-11. Again, it is Gaddis's burden to prove his claims. *Ford,* 546 F.3d at 1333. Yet, he does not even begin to supply the factual foundation to this claim.[3] For example, he does not deny his prior criminal history. Nor does he deny that his lawyers would have to, as a matter of strategy, consider that history's probable admissibility on

---

[3] "The entrapment defense consists of two elements: (1) 'government inducement of the crime,' and (2) 'lack of predisposition on the part of the defendant.' *United States v. Ryan*, 289 F.3d 1339, 1343 (11th Cir.2002)." *United States v. Little*, 227 F. App'x 861, 863 (11th Cir. 2007).

predisposition grounds, coupled with the difficulty of proving that Gaddis was simply minding his business when the government's CI "persisted" in enticing him into a crime he otherwise would not have committed, as he now conclusorily (and backed up with no affidavit at that) claims. Doc. 23 at 7-8. This claim therefore also fails, as does his claim that his lawyers: (a) failed to hire private investigators (to do what and show what Gaddis does not say), and (b) failed to investigate alternative lines of defense (Gaddis conspicuously fails to say what *kind* of defense). Doc. 1 at 11-12; doc. 23 at 8-9.

### 4. *Lying and Coercion Claim*

Gaddis next claims that his counsel were ineffective for "lying to [him] to induce [his] guilty plea." Doc. 1 at 12-14 & ex. G; doc. 23 at 9-10. Counsel told him, Gaddis now claims, that they would obtain from the prosecutor Gaddis's cell phone records if he signed the plea agreement. Those phone records could support a claim of sentence manipulation which, if proved, would enable the Court to sentence him for powder instead of crack cocaine. *Id.*

Those (false) promises, Gaddis further asserts, were matched by

counsel's additional, false representation that an entrapment claim would not fly. *Id.* Counsel also allegedly rushed him into signing the plea agreement even though he told them, just before his Rule 11 hearing, that he did not want to plead guilty. Finally, counsel insisted to him that he could not withdraw his plea after he signed the plea agreement. *Id.*

The Court agrees with the government here. The plea colloquy shows that Gaddis repeatedly assured the Court that he had *not* been lied to, coerced, pressured, by anyone. Doc. 19 at 23-24; Cr. doc. 47 at 3-5, 16, 18 (district judge explained to him that the purpose of the hearing was to establish that his plea was *freely and voluntarily* given, and that Gaddis had a right to stop the proceeding at any time to confer with his counsel or ask the Court to explain any matter further to him, etc.); Cr. doc. 47 at 20 ("Q. Mr. Gaddis, are you pleading guilty freely and voluntarily? A. Yes, sir. Q. Has your lawyer, Mr. Harris, tried to force you or push you into pleading guilty? A. No sir").

As a matter of public policy, no court should tolerate a claim of this kind, wherein the movant literally insists in his § 2255 filings that he *lied* during the Rule 11 hearing--all to win § 2255 relief from the Rule 11

hearing's result (*i.e.*, the guilty plea's acceptance and later sentencing consequences flowing from it). Nor should such a movant find succor in claiming, as Gaddis implies here, that "my lawyer told me to lie." Doc. 23 at 2.[4] This claim is meritless.

### 5. *Speedy Trial Waiver*

The gist of Gaddis's Speedy Trial Act (STA)[5] claim is that, had his first appointed lawyer (Harris, later joined by A. Zipperer) done his job and

---

[4] After the government pointed out that the plea colloquy negates Gaddis's factual assertions on this point, Gaddis replied:

> The government in response to Gaddis' claim of ineffective assistance of counsel rely's heavily on the answers he gave at his Rule 11 hearing and offers nothing more in ma[n]y cases to controvert the substance of his claims. Gaddis' in his motion for leave of court to supplement his §2255 motion presented the fact that his attorney's *instructed him* how to answer all of the Court's Rule 11 questions.

Doc. 23 at 2 (emphasis added); *see also id.* at 3 (implying that his lawyers improperly coached him to lie).

[5] The Speedy Trial Act

> generally requires that trial begin within seventy days of a defendant's indictment or his first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). If trial does not begin within the requisite time period and the defendant moves for dismissal prior to trial, the court must dismiss the indictment, either with or without prejudice. 18 U.S.C. § 3162(a)(2). Whether to dismiss with or without prejudice is left to the "guided discretion of the district court." *United States v. Taylor*, 487 U.S. 326, 334-35, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988).

*United States v. Lewis*, 2009 WL 250482 at* 2 (N.D. Cal. Feb. 3, 2009) (unpublished).

timely investigated and prepared his case, he would not have had to have waived Gaddis's speedy trial rights and thus cost Gaddis a valuable defense. Doc. 1 at 14-15. The government musters no real factual defense to this. Doc. 19 at 27-28 (recounting the same sequence of events but insisting that Gaddis suffered no prejudice because the right was "waived" to enable counsel more time to investigate and prepare an entrapment defense; by insisting that the claim was "waived," the government thus does not dispute the *reason* for the delay--counsel's apparent laxity in litigating Gaddis's rights before the STA clock ran out--which is the reason that then forced them to *waive* Gaddis's STA rights).

This claim nevertheless fails because it is within the norm for defense lawyers to indulge in a non-extraordinary STA waiver. *See McCarty v. United States*, 2008 WL 4754840 at * 4 (E.D. Cal, Oct 30, 2008) (unpublished) ("[t]he fact that Petitioner's attorney may have requested that time be excluded for such normal functions as reviewing discovery and filing motions, and that such time was excluded under the Speedy Trial Act does not show deficient performance on the part of Petitioner's attorney, let alone prejudicial deficient performance").

Moreover, assuming *arguendo* that counsel fell below the *Strickland* performance standard on this claim, Gaddis must still show prejudice. He cannot do that, however, because he cannot show that he would have won a dismissal with prejudice, as opposed to the far more likely dismissal without prejudice followed by re-indictment. *See, e.g., United States v. Medina*, 524 F.3d 974, 986-87 (9th Cir. 2008) (dismissal of indictment charging conspiracy to distribute cocaine and methamphetamine without prejudice, rather than with prejudice, was warranted, for an STA violation; the crimes were serious, and although the violation of the STA was serious, since defendant was in detention pending the outcome of the trial, the defendant was detained only an additional 21 days, and there was no evidence that the government acted in bad faith in delaying the trial). This claim, then, is also meritless.

### 6. *Drug Quantity and Powder/Crack Objections*

Movant next contends that his counsel were ineffective for failing to object to the Presentence Investigation Report's (PSI's) quantification of the amount of crack that he sold to the CI. Doc. 1 at 15. As the government correctly points out, however, Gaddis was sentenced as a career

offender, thus rendering quantification irrelevant. Doc. 19 at 28-29. *See Evans v. United States*, 218 F. App'x 924, 927 (11th Cir. 2007) (no IAC where career-offender status rendered quantification irrelevant). This claim, too, is baseless. For the same reason, so is Gaddis's related ineffective-counsel claim, which is premised on counsel's failure to object to the crack/powder cocaine sentencing disparity issue at Gaddis's sentencing. Doc. 1 at 16. The crack/powder-based portion of his motion to amend his § 2255 motion (doc. 8 at 1-11) is denied for the same reason.

### 7. *Invalid State Convictions*

Gaddis's next ineffective assistance of counsel claim pivots on U.S.S.G. § 4B1.1(a). That provision of the sentencing guidelines authorized the district judge in this case to increase Gaddis's sentence, as a career offender,

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least *two prior felony convictions* of either a crime of violence *or a controlled substance offense*.

U.S.S.G. § 4B1.1(a) (emphasis added). The Eleventh Circuit has ruled that defendants must show that an earlier conviction was "presumptively void"

18

(*e.g.*, the product of an uncounseled conviction) before "the sentencing court is constitutionally required to review the earlier conviction before relying on it." *United States v. Houston*, 249 F.App'x 784, 785 (11th Cir. 2007). Gaddis has not made that showing here, so he cannot show prejudice. This claim therefore should be denied, along with his motion to amend, doc. 8 at 11, in which he seeks to further fault his attorneys for failing to show that on those prior convictions his *state-court* counsel were ineffective. (Gaddis apparently--and absurdly--reasons that if his *federal* court lawyers pursued this, it "somehow" would have vacated his prior convictions in time to alter the sentencing here). Also denied is his "Ground Two" claim based on the same state court convictions--a claim that he concedes is unripe. Doc. 1 at 22-23.[6]

---

[6] Incidentally, Gaddis's present pursuit of vacatur in the state court system (*see* doc. 23 at 14), may be too late. *See Hamilton v. United States*, 2008 WL 4533692 at * 2 (S.D. Ga. Oct. 6, 2008) (unpublished) (a prisoner was not entitled to have his federal sentence for distribution of crack cocaine set aside or corrected after his state sentences, which the federal court relied upon at sentencing, were vacated. The prisoner did not act with reasonable diligence in seeking to vacate the state sentences, but waited more than 21 months after his federal sentence was imposed to attack them).

### 8. *Mitigating Evidence*

Next, Gaddis complains that his counsel failed to argue mitigating evidence of sentencing manipulation at sentencing. Doc. 1 at 16-17. Counsel promised him, he insists, that if he pled guilty counsel would argue sentencing manipulation at sentencing (as opposed to entrapment at trial), yet then failed to do so. *Id.* at 17. This claim fails outright because even if counsel showed that the government in bad faith maneuvered him into committing a higher-quantity crack offense than he was predisposed to commit (the essence of sentencing manipulation, or "sentence entrapment"),[7] nevertheless his sentence was driven by the career-offender guideline and thus would not have been affected had the powder/crack distinction been resolved in his favor.

### 9. *Insufficiency of Evidence*

Gaddis next contends that his counsel "were ineffective for failing to

---

[7] *See United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007) (when a defendant makes a sentencing entrapment claim, he argues that, although predisposed to commit a minor or lesser offense, he has been entrapped into committing a greater offense subject to greater punishment); *United States v. Grinnage*, 2009 WL 215327 at * 2 (11th Cir. Jan. 30, 2009) (unpublished) ("We have made clear that we do not recognize a claim of sentencing entrapment, which focuses on a defendant's conduct and predisposition to commit an offense. We have considered a claim of sentence factor manipulation, which focuses on the nature of the government's conduct.") (cite omitted).

raise [the] issue of insufficiency of evidence on appeal." Doc. 1 at 17.

However, he provides no specifics here, so this claim is denied. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (a petitioner is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (quotes and cite omitted); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir.1973) (no § 2255 evidentiary hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations); *Gabe v. United States*, 2009 WL 50161 at * 3 (S.D. Ga. Jan. 6, 2009) (unpublished); *Byrd v. United States*, 2008 WL 4326533 at * 3 (S.D. Ga. Sept. 22, 2008) (unpublished).

## 10. *Appellate Error -- Sentencing*

Gaddis's next claim (doc. 1 at 18-20; doc. 23 at 12-13) centers on this sentencing hearing exchange, wherein the district judge, for a moment at least, was seemingly influenced by a PSI assertion that Gaddis had possessed marijuana in the past (a fact that grew out of a car accident):

> THE COURT: Well, now, when he had the accident, according to my reading of the PSI, Mr. Harris, at the time of that accident there was marijuana in his automobile, and he was found

in possession of marijuana in his automobile at the time of that accident. That's what the PSI says.

\*     \*     \*     \*

THE COURT:     I know, but you said he had no idea that he might be arrested or that he might have any problem. When you go out and you have a serious accident and the police find marijuana in your car, and you're on probation and you're not supposed to possess marijuana or break the law, I think that gives you a pretty good idea that you might be in trouble.

\*     \*     \*     \*

MR. HARRIS:     Mr. Gaddis tells me that there was no marijuana in his car at the time of the November the 24th accident, Your Honor, and he's prepared to testify under oath that that's the case.

THE COURT:     Well, I may be mistaken, but let's see.
[Pause]

MR. ZIPPERER:     Your Honor, I'm given to understand that Paragraph 41 refers to a prior accident.

THE COURT:     I understand that. Okay, I may be mistaken about that. *Apparently it's not in the PSI*. Go ahead.

Cr. doc. 41 at 31-32 (emphasis added).

Gaddis accuses his counsel of being ineffective for failing to argue on appeal that the district "judge's misunderstanding . . . led him to believe Movant's post-offense rehabilitation was insincere." Doc. 1 at 18. Gaddis initially ignored the above-excerpt showing that the district judge corrected himself. Doc. 1 at 18-20. In his brief replying to the government's brief (which pointed it out), however, he indulges in sheer speculation in a vain attempt to salvage his claim by suggesting that the district judge *could have* suffered a residue of bias about Gaddis's insincerity while sentencing Gaddis, since the mistaken notion could have subconsciously lingered in his mind. Doc. 23 at 112-13.

Of course, Gaddis simply ignores the fact that judges are trained to mentally undo taints once exposed to them--something that factors into recusal analysis. *Cf. Bannister v. Delo*, 100 F.3d 610, 614 (8th Cir.1996) (district judges are presumed impartial and movant bears substantial burden of proving otherwise); *Clemens v. Riverfront Times*, 2006 WL 587699 at * 1 (E.D. Mo. Mar 10, 2006) (unpublished) ("It is well-settled that adverse rulings during the course of proceedings are not, by themselves, sufficient to establish bias or prejudice which will disqualify the presiding

judge."). Hence, he has failed to show that his counsel were ineffective, so this claim likewise fails on the merits.

### 11. *"Certiorari Petition"*

Gaddis next contends that his attorneys were ineffective for failing to appeal *United States v. Gaddis*, 203 F. App'x 994 (11th Cir. 2006) to the U.S. Supreme Court *and* for misadvising him about doing so. Doc. 1 at 20; doc. 23 at 13. Gaddis himself, however, furnishes a letter from counsel advising him about such further appeal, which counsel opined would be futile. Doc. 1 ex. F.

This claim fails on two grounds: (1) the *"Tejada* doctrine," *see Tejada,* 941 F.2d at 1559 (a petitioner is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"); and (2) there is no constitutional right to counsel at this stage, so this claim cannot satisfy basic *Strickland* criteria. *See, e.g., Pena v. United States*, 534 F.3d 92 (2d Cir. 2008) (defendant had no right to assistance of counsel beyond first-tier appeal; therefore his appellate counsel had no duty to inform him of possibility of certiorari review by United States Supreme Court); *United*

*States v. Ngo*, 2008 WL 3834397 at * 3 (W.D. Okla. Aug. 12, 2008) (unpublished) ("a criminal defendant, however, has no constitutional right to assistance of counsel beyond the first-tier appeal to the Court of Appeals"); C.J. McFadden, GA. APPELLATE PRACTICE § 19-4 (*The right to appeal a criminal conviction in Georgia--Generally*) (2d ed. Nov. 2008). Therefore, this claim also fails.

### 12. *Counsel's Withholding of Information*

Gaddis's next claim--that his counsel were ineffective for withholding a second round of discovery disclosed by the government--fails outright because he does not even hint at how he was prejudiced by it. Doc. 1 at 21; doc. 23 at 13-14. For that matter, he does not rebut the government's showing that such disclosure contained nothing material to his defense. *See* doc. 19 at 39-41; doc. 23 at 13-14. At most, movant engages in speculation here. Doc. 23 at 13-14 (the disclosure "*could* have possibly given [Gaddis] more information about the CI and her activities, her credibility, possible defense, and judge the strength and weaknesses of the government's case as well as his defense options") (emphasis added).

## III. CONCLUSION

Accordingly, the government's motion to dismiss is **DENIED** as moot. Doc. 3. Defendant Sean Gaddis's § 2255 motion, meanwhile, should be **DENIED**, along with his "summary judgment" and "amend" motions. Docs. 1, 4, 8.

**SO REPORTED AND RECOMMENDED** this ___23rd___ day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA